IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RUSSELL GEBERT,

Plaintiff,

vs.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

Defendant.

8:23CV289

MEMORANDUM AND ORDER

This matter is before the Court on motions for judicial review of a final decision of the Acting Commissioner of Social Security ("Commissioner"). The plaintiff, Russell Gebert ("Gebert"), appeals a final determination of the Commissioner denying his social security disability benefits. Filing No. 12. The Commissioner seeks an order affirming the decision. Filing No. 16. This Court has jurisdiction under 42 U.S.C § 405(g) and § 1383(c)(3).

## I.    BACKGROUND

### A.    Procedural History

On April 23, 2018, Gebert applied for disability benefits under Title II of the Social Security Act alleging disability beginning April 4, 2018. Filing No. 5-5 at 2–3. He later amended his alleged onset date of disability to November 5, 2018. *Id.* at 31. Gebert requested and was granted a hearing before an administrative law judge ("ALJ") on April 6, 2020. Filing No. 5-2 at 11. The ALJ denied benefits on April 17, 2020. *Id.* at 8. Gebert filed a civil action in this Court which was subsequently remanded pursuant to sentence four of 42 U.S.C. § 405(g). Filing No. 7-2 at 5; *see also Gebert v. Saul*, 8:20cv514, Filing No. 27. The Appeals Council issued its subsequent remand order on August 31, 2022.

1

Filing No. 7-2 at 13–15.  On February 27, 2023, the ALJ held a remand hearing and on March 15, 2023, issued an unfavorable decision.  Filing No. 7-1 at 5, 27.  Gebert did not file exceptions and the Appeals Counsel did not independently review the decision, so the March 15, 2023, decision became the final decision of the agency.  *See* 20 C.F.R. § 404.984.

Gebert challenges the ALJ's finding, arguing that in reaching his decision, the ALJ (1) did not articulate sufficient reasons for finding Gebert's therapist not persuasive concerning his mental impairments, (2) did not articulate sufficient reasons for finding Dr. Severson's consultative examiner opinions not persuasive concerning his physical impairments, (3) erred by not developing the record by seeking clarification from the vocational expert concerning job numbers methodology, (4) did not fully and fairly develop the record concerning Gebert's physical and mental limitations, (5) did not provide good reasons for finding Gebert not credible in reporting his limitations, and (6) was not constitutionally appointed.  Filing No. 13.

### B.   Hearing Testimony

#### i. April 6, 2020, Hearing

Gebert testified that he was in the United States Army for 24 years.  Filing No. 5-2 at 64–65.  He stated while in the Army he was in "combat arms" and spent years deployed. *Id.*  He explained that as his career concluded, his experienced performance issues and was having more personal issues impacting his professional life, so he took a civilian job which would limit his interaction with people.  *Id.* at 65–66.

Gebert testified that his first civilian job, and last employment, was as a security camera monitor at a mental health facility in 2014.  Filing No. 5-2 at 55.  In that position,

Gebert would view camera footage on a monitor to observe staff and residents of the facility. *Id.* at 55–56. Gebert testified that he usually worked in a small room with one or two other coworkers. *Id.* at 55. When questioned about why he left that position, he indicated that his relationships with coworkers had become strained. *Id.* at 56. He felt aggravated by the end of shifts, became hard to work with, and would result to self-isolation after work hours to recuperate. *Id.* Gebert stated he suffered bouts of depression and found it more difficult to function. *Id.* He indicated that he began taking time off work to de-stress and found reasons to miss work in order to avoid other people and work responsibilities. *Id.* Gebert also testified that he had trouble maintaining focus and would often miss incidents he was required to observe. *Id.* at 57. He testified that he left this position after approximately one year because if he stayed longer, "[the situation] would deteriorate." *Id.* at 56–57.

Gebert testified that he struggles with anxiety, anger management, PTSD, depression, and sleep disturbances. Filing No. 5-2 at 58–63. Gebert stated he has interrupted sleep nightly and will go 24 hours without sleeping at least once or twice a week. *Id.* at 60. When he cannot sleep, he testified that he is anxious, his mind will wander and race, and he experiences intrusive thoughts. *Id.* He further stated he spends a lot of time alone, even in his home, because of his anxiety and anger management issues. *Id.* at 58–59. He indicated he experiences panic attacks weekly and sometimes daily. *Id.* at 61. Gebert testified he has trouble concentrating on daily tasks such as reading the news. *Id.* He testified that he could do some small daily tasks, such as going to the grocery store, but does not generally go out in public. *Id.* at 62. When he does go to the grocery store, Gebert testified he is often looking over his shoulder and tries to "get

3

in and get out." *Id.* at 63. He stated he tries to avoid contact with other people and cannot go out to eat or go to a movie without feeling anxious or confined. *Id.* at 62. Gebert indicated he sees his therapist, Cynthia Muhlbauer, weekly and takes medication for depression and to assist with sleep. *Id.* at 58.

### ii. February 27, 2023 Hearing

On February 27, 2023, the same ALJ held Gebert's hearing after remand. Filing No. 7-1 at 61. Gebert again testified about his military career from 1988 to 2012 where he experienced frequent deployments and held combat positions. *Id.* at 71–72. Gebert explained that his military experiences are the basis for his PTSD and that he retired due to his declining mental health in November 2012. *Id.* He again testified as to his job as a security monitor and how he experienced anger and attention issues while in that position. *Id.* at 72–75.

Gebert testified that his PTSD symptoms have somewhat improved since his 2020 hearing, but he still suffers from night terrors, survivor's guilt, anxiety, public apprehension, trouble concentrating, and anger issues. Filing No. 7-1 at 76. He was still seeing his therapist and taking medication with little improvement. *Id.*

Gebert also testified to his physical impairments. Filing No. 7-1 at 80. He indicated he suffers from back and knee pain and a shoulder injury. *Id.* He also testified to large fluctuations in his weight. *Id.* at 80–81. Gebert testified that these issues would have precluded him from working on his feet for 6 hours a day. *Id.* at 82.

A vocational expert, Denise Waddell, also testified at the hearing. Filing No. 7-1 at 87. She was asked about a hypothetical worker who can perform light work with the following limitations:

> This person is able to stoop, kneel, crouch and crawl occasionally, is able to reach overhead, occasionally, can perform work that does not require sustained exposure to concentrated extreme temperatures or vibration, is able to interact with coworkers, supervisors, and the public occasionally, can perform simple tasks, can exercise proper judgment in performing those tasks, is able to respond appropriately to routine changes in the workplace, is able to deal with work circumstances involving several concrete variables in standardized situations.

*Id.* at 87–88.  Ms. Waddell testified there are jobs an individual could perform in the economy including crimper, bakery machine feeder, and hand bander.  *Id.* at 88.  She later identified the jobs of collator operator, retail price marking, and electrical assembler. *Id.* at 100.  Ms. Waddell further testified that an employee can be off task up to 10 percent of the time or absent up to one day per month with anything above these ranges being preclusive to work.  *Id.* at 96.

### C.   Medical Evidence

Gebert experiences both physical and mental health conditions.  *See generally* Filing Nos. 6-1; 7-6; 7-7; 8-1.  He has been diagnosed with PTSD and major depressive disorder.  Filing No. 6-1 at 676.  His severe physical impairments include degenerative disc disease, degenerative joint disease, and obesity.  *Id.* at 210, 6, and 21.  Other less severe diagnosed impairments include sleep apnea, gastroesophageal reflux disease, essential hypertension, tinnitus and hearing loss, osteoarthritis, and irritable bowel syndrome.  *Id.* at 12, 21, 451, and 210.   He has been treated for several years at VA facilities as well as by a private mental health provider.  *See generally* Filing No. 6-1.  The record shows Gebert sought treatment complaining of anxiety, post traumatic stress, depression, irritability, anger, sleep disturbances, panic attacks, hypervigilance, and problems with concentration.  Filing No. 6-1 at 21, 24, 28, 82, 71, and 53.  Throughout

the relevant time period, Gebert was taking various medications for his mental health conditions and pain. *Id.* at 208, 504, and 676.

On November 5, 2018, Gebert's amended alleged onset date, he underwent a consultative examination with Dr. Linda Hunter, Psy.D. arranged for by the Nebraska Disability Determination Services. Filing No. 6-1 at 202–06. At that time, Gebert reported physical symptoms including chronic fatigue, chronic digestion issues, skin issues, chronic pain, sleep apnea, sleep disturbances, and back issues. Filing No. 6-1 at 204–05. As to his mental health, Gebert reported experiencing chronic depression and PTSD. *Id.* He reported extreme difficulty in public and indicated anxiousness around others—conditions that require him to leave social situations after approximately 30 minutes. *Id.* He also indicated that various noises and smells often trigger his anxiety. *Id.* Gebert indicated he spends most of his days in his bedroom isolating. *Id.* He described needing reminded of basic personal hygiene. *Id.* He reported he is easily distracted and can concentrate for only limited periods of time. He described having "peaks and valleys" with his mood and symptoms. Gebert's girlfriend was present at the evaluation and stated that Gebert may isolate for weeks at a time and can become aggressive and combative when forced to interact. *Id.* She also stated she will remind him to do "normal things" like pay bills and eat. *Id.*

Based on her evaluation, Dr. Hunter opined that "it does not appear [Gebert] has the capacities normally associated with the ability to obtain and sustain gainful employment due to depression and ongoing PTSD symptoms." Filing No. 6-1 at 206. She indicated that Gebert experiences restrictions on his activities of daily living and ability to maintain social functioning, experiences recurrent episodes of deterioration

6

when stressed, and is unable to sustain concentration and attention.  *Id.* at 207.  She also determined he has the ability to understand and remember short and simple instructions, can adapt to changes in his environment, and for limited periods of time, can carry out simple instructions and appropriately relate to co-workers.  *Id.*

Gebert underwent a physical exam in February 2019 with Dr. Meryl Severson, M.D.  Filing No. 6-1 at 209–15.  At that time, he reported degenerative disc disease, arthritis in his knees, elbows, shoulders, and lower back, and generalized pain.  He also reported experiencing GERD, hearing loss, sleep issues, and irritable bowel syndrome. *Id.*  Upon exam, Dr. Severson observed Gebert to be morbidly obese, to ambulate with a wide base gait due to his obesity, and to transfer to the exam table without assistance. His spine was straight without tenderness.  *Id.*  Examination of his upper and lower extremities were unremarkable.  Gebert had appropriate affect, was cooperative, and dressed appropriately.  *Id.*

On May 1, 2019, Gebert saw Cynthia Muhlbauer, Licensed Independent Mental Health Practitioner, to begin psychotherapy.  Filing No. 6-1 at 225–56.  During his intake, Gebert reported he gets angry easily, can't sleep due to flashbacks of combat, is hypervigilant, isolates from others, and experiences night terrors.  *Id.*  He further reported feeling helpless to stop or control his anger and feels guilty when he frightens people due to his anger.  *Id.*  He stated he had difficulty being around others and functioning in public settings.  *Id.*  Muhlbauer diagnosed him with PTSD related to his military service.  *Id.* Gebert saw Muhlbauer for psychotherapy on a weekly basis throughout the rest of the relevant period.  *Id.*  During various visits, Gebert reported ongoing sleep disturbances,

7

anxiety, irritability, angry outbursts, isolation, flashbacks, difficulty being in around others, and incidents in various public settings.  *Id.*

During this time, Gebert also saw primary care through the VA.  He reported ongoing back and shoulder pain, mental health symptoms, and experienced large weight fluctuations.  Filing No. 6-1 at 434–48.  In September 2019, Gebert's primary care physician noted he was up to 419 pounds.  Filing No. 6-1 at 686.  Gebert reported he was very isolative and depressed and experienced daily back and knee pain.  *Id.*  His physician noted Gebert is morbidly obese and stated "[u]nfortunately, his diet is directly related to his depression[,] and he binge eats routinely."  *Id.* at 688.

In December 2019, Gebert saw Dr. Russell Goldstein at the VA for psychiatric medication management.  Filing No. 6-1 at 675–78.  He reported continuing symptoms of nightmares, flashbacks, hypervigilant feelings, and isolation.  *Id.*  Gebert reported most days he is "just existing."  *Id.*  He also reported he has not been taking Zoloft since the spring.  *Id.*  Along those lines, Gebert reported he did not think his medication has ever helped but he cannot be sure.  *Id.*

On December 17, 2019, Gebert saw Myla Browne for a psychology consultation at the VA.  Filing No. 6-1 at 664–94.  His mood was depressed, and his affect was congruent.  *Id.* at 667.  He denied suicidal thoughts and hallucinations.  *Id.*  Browne observed Gebert's thoughts to be logical and goal directed.  *Id.*  He was a bit fidgety, and he wore his sunglasses during the session but otherwise did not exhibit unusual movements or mannerisms.  *Id.*  Gebert reported experiencing constant anger and irritability, sleep disturbances, depression, anxiety, and being uncomfortable in social

situations. *Id.* Browne diagnosed Gebert with PTSD, persistent depressive disorder, and social anxiety disorder. *Id.* She recommended ongoing mental health treatment. *Id.*

## II. DISCUSSION

### A. Standard of Review

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is "supported by substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph, v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002)). Substantial evidence means something less than a preponderance of the evidence, but enough that a reasonable mind might accept the evidence as adequate to support a conclusion. *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)).

In determining whether there is substantial evidence to support the Commissioner's decision, this court must consider evidence that detracts from the Commissioner's decision as well as evidence that support. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The Court also determines whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000).

### B. Eligibility

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). Accordingly, the Social Security Administration has promulgated a five-step

sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4); *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021). The ALJ considers

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). The claimant has the burden to show he is disabled through the first four steps. *See Moore v. Astrue*, 572 F.3d 520, 523. The steps are followed in sequential order, such that "[i]f it can be determined that a claimant is not disabled at a step, the ALJ does not need to continue to the next step." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)).

Steps four and five require the ALJ to assess a claimant's residual functioning capacity ("RFC") – that is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545. The ALJ is required to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). An ALJ's RFC determination (1) must give appropriate consideration to all of a claimant's impairments; and (2) must be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

C.      **ALJ's Findings**

In evaluating Gebert's claim, the ALJ followed the sequential evaluation process. Filing No. 7-1 at 5–27. The ALJ first found at Step One that Gebert had not engaged in substantial gainful activity during the period from his alleged onset date of November 5, 2018, through his date last insured of December 31, 2019. *Id.* at 6–7

At Step Two, the ALJ found that Gebert had the following severe impairments: degenerative disc disease, degenerative joint disease of the left shoulder, obesity, post-traumatic stress disorder, and major depressive disorder. Filing No. 7-1 at 7. He also determined Gebert had multiple non-severe impairments—those which have no more than minimal limitation on his ability to perform basic work activities—including obstructive sleep apnea, gastroesophageal reflux disease, hypertension, tinnitus and hearing loss, osteoarthritis in his knees, and irritable bowel syndrome. *Id.* at 8.

The ALJ next determined the severity of Gebert's physical and mental impairments did not meet or medically equal the necessary criteria. Filing No. 7-1 at 11–13. When evaluating his mental impairments, the ALJ considered the four broad functional areas of mental functioning set out for evaluating mental disorders to include: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. *Id.* at 11–12; 20 C.F.R. §§ 404.1520a(c); 416.920a(c). The ALJ determined Gebert had moderate limitation in each of the four categories. Filing No. 7-1 at 9–12.

The ALJ concluded at Step Three that Gebert's severe impairments, or the combination of impairments, did not meet or equal the listing of impairments that would

11

render him presumptively disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1. Filing No. 7-1 at 11.

The ALJ then moved to Steps Four and Five to determine whether Gebert can "perform 'past relevant work,' and if not, whether [he] can perform 'any other work.'" *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017). Making these determinations required the ALJ to assess Gebert's RFC, which is the most a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). RFC is determined "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his] limitations." *Kraus*, 988 F.3d at 1024 (quoting *Baldwin*, 349 F.3d at 556 (8th Cir. 2003)).

According to the ALJ, Gebert's RFC is as follows:

> the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he was able to stoop, kneel, crouch, and crawl occasionally. He was able to reach overhead occasionally. The claimant was then able to perform work that did not require sustained exposure to concentrated extreme temperatures or vibration. He was able to interact with coworkers, supervisors, and the public occasionally. The claimant was able to perform simple tasks. He was able to exercise proper judgment in performing those tasks. The claimant was able to respond appropriately to routine changes in the workplace. He was able to deal with work circumstances involving several concrete variables in standardized situations.

Filing No. 7-1 at 13. With that RFC, the ALJ found Gebert could not perform any past relevant work. *Id.* at 24. However, the ALJ concluded Gebert could perform other light work such as a crimper, bakery machine feeder, hand bander, collator operator, retail price marker, or electrical assembler. *Id.* Therefore, the ALJ found Gebert was not disabled. *Id.* at 18, 25–26.

12

In reaching this conclusion, the ALJ found that while Gebert's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Gebert's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records. Filing No. 7-1 at 13–14.

When considering his mental health limitations, the ALJ acknowledged that the medical records confirm Gebert has been diagnosed with PTSD and major depressive disorder, and that he regularly reported to his treatment providers that he experienced irritability, anger, self-isolation, insomnia, nightmares, panic attacks, hypervigilance, intrusive thoughts, anxiety, depression, and trouble concentrating. Filing No. 7-1 at 14. Even so, the ALJ determined Gebert's treatment records "casts some doubt" on his allegations about the severity of his symptoms and his complaints are "unsupported by the objective medical evidence." *Id.* at 14–15. Specifically, the ALJ noted that various providers documented that Gebert was well groomed, on time, responsive, and coherent or properly oriented. *Id.* at 15. He also noted a gap in psychiatric treatment, that Gebert never required emergent or inpatient mental health treatment, and that his treatment was "generally conservative." *Id.* at 14–15.

Regarding Gebert's physical impairments, the ALJ found the medical evidence confirmed degenerative disc disease and degenerative joint disease of the left shoulder. Filing No. 7-1 at 16. The ALJ again concluded that that the overall conservative treatment for Gebert's shoulder and back do not support Gebert's allegations of disability. *Id.* Rather, the ALJ determined the RFC with reduced range of light work with postural,

overhead reaching, and environmental limitations was appropriate.  *Id.* at 18.  The ALJ reached the same conclusion when considering Gebert's obesity.  *Id.*

The ALJ further determined that Gebert's daily activities were inconsistent with his alleged limitations.  Filing No. 7-1 at 18.  The ALJ noted that Gilbert was able to prepare meals, some household chores, and go grocery shopping.  *Id.*  Additionally, the ALJ concluded that the fact that Gebert has had the same girlfriend for a number of years and his ability to maintain a friendly demeanor at times is inconsistent with his allegations.  *Id.*  The ALJ determined Gebert's testimony as to why he left his employment as a security monitor was inconsistent and that he was able to maintain concentration as part of these proceedings.  *Id.* at 19.

The ALJ next considered various opinions from treating providers and agency consultants.  Dr. Linda Hunter, Psy.D., provided a consultative examination of Gebert for the Nebraska Disability Determination Services in November 2018.  She opined that Gebert did not have the capacities normally associated with the ability to obtain and sustain gainful employment due to depression and ongoing PTSD.  Filing No. 6-1 at 202–06.  In considering Dr. Hunter's opinion, the ALJ determined her opinion was "somewhat inconsistent," "vague," and based on Gebert's subjective reports.  Filing No. 7-1 at 21.  He concluded some portions of her opinion were somewhat persuasive while others were not consistent with the evidence as a whole and less persuasive.  *Id.*

Similarly, the ALJ found Gebert's therapist's, Cynthia Muhlbauer, opinion to be unpersuasive.  Filing No. 7-1 at 22.  Gebert saw, Muhlbauer weekly for counseling beginning in May 2019.  Filing No. 6-1 at 225.  She diagnosed him with chronic, severe post-traumatic stress disorder related to his military service and multiple combat tours.

14

*Id.* at 227.  She opined Gebert had numerous limitations related to his abilities to adapt or manage himself, work with others, and to concentrate.  Filing No. 6-1 at 642–45.  In many categories, she concluded that Gebert's limitations would impact his performance for 15% of an 8-hour workday.  *Id.*  Muhlbauer reiterated her opinion in February 2023. Filing No. 8-1 at 10–15.  The ALJ determined Muhlbauer's opinion was inconsistent with the evidence in the record and "extreme."  Filing No. 7-1 at 21.

The ALJ likewise discounted Dr. Meryl Severson's opinion regarding Gebert's physical limitations.  Filing No. 7-1 at 22.  In February 2019, Dr. Severson, M.D., evaluated Gebert and determined that Gebert was able to walk for 30 minutes, climb one flight of stairs, stand for 15 minutes, and sit for up to 45 minutes.  Filing No. 6-1 at 210–17.  The ALJ found Severson's opinion "less persuasive" because it "appears to be largely based on the claimant's subjective complaints."  Filing No. 7-1 at 22.

The ALJ next considered various compensation and pension examinations performed by the Department of Veterans Affairs.  Filing No. 7-1 at 22.  He found these opinions to support a moderate limitation in Gebert's ability to work due to PTSD and determined they were "generally consistent with the clinical observations documented by other medical providers," and were thus, somewhat persuasive.  Filing No. 7-1 at 21–23. As to Gebert's physical impairments, the ALJ concluded the compensation and pension examinations supported the RFC above.  *Id.* at 23.

Finally, the ALJ examined the findings made by the state agency medical and psychological consultants who reviewed Gebert's file at the initial and reconsideration levels.  Filing No. 7-1 at 23.  Specifically, as to his physical impairments, Dr. Nancy Ingham, MD, determined Gebert was limited to medium exertional work with additional

physical limitations.  *Id.*  Dr. Robert Roth, MD, affirmed these medical findings upon reconsideration.  *Id.*  The ALJ also considered the opinion of state psychological consultant Christopher Milne, PhD, who opined that "although claimant['s] condition is severe" Gebert would be able to perform simple, unskilled work, with limited social contacts.  Filing No. 7-1 at 24.  Glenda Cottam, PhD, affirmed this determination upon reconsideration.  *Id.* at 24.  The ALJ determined Gebert to be somewhat more limited, both physically and mentally, than the consultant's finding but determined their analysis to be persuasive to the extent they are "consistent with the evidence overall."  Filing No. 7-1 at 23–24.

Based on the testimony of the vocational expert, the ALJ found that there are jobs in significant numbers in the national economy that Gebert could perform with the RFC he assigned.  Filing No. 7-1 at 25.  Thus, the ALJ concluded Gebert was "not under a disability, as defined in the Social Security Act, at any time from November 5, 2018, the amended alleged onset date, through December 31, 2019, the date last insured."  *Id.* at 26.

### D. Analysis

Gebert challenges the ALJ's finding.  The Court has carefully reviewed the record and finds that the ALJ's denial of benefits should be reversed.[1]  Specifically, the ALJ did not properly credit the opinion of Gebert's treating mental health practitioner, Cynthia Muhlbauer.  Nor did the ALJ properly account for and consider Gebert's own account of his physical and mental limitations.  Because the ALJ failed to appropriately credit the medical evidence and Gebert's testimony of disabling limitations, the ALJ offered an RFC

---

[1] The Court does not reach many of Plaintiff's arguments as it finds the other issues discussed herein to be determinative.

that did not accurately reflect Gebert's impairments and limitations. Moreover, the record overwhelmingly supports a finding of disability.

First, the ALJ's finding that Muhlbauer's opinion is unpersuasive is not supported by the record. Muhlbauer is a licensed mental health practitioner with knowledge of PTSD who treated Gebert on a *weekly* basis for multiple years. Despite the ALJ's suggestion otherwise, her notes are consistent with her opinions. Based on her weekly interactions with Gebert, Muhlbauer opined that Gebert has "extreme difficulty interacting with people," and her clinical testing and interviews "indicate[s] he functions at the most severe level of symptoms." Filing No. 6-1 at 644. This is supported by her treatment notes where she observed Gebert to be anxious, agitated, and stressed and where Gebert reported anxiety, anger, isolation, difficulty sleeping, difficulties in public, and fears about his own behaviors. *See generally* Filing No. 6-1 at 223–56; 560–601. Her opinion that Gebert would be unable to tolerate working more than 1-2 hours a day for 2-3 days a week is amply supported by the record.

When evaluating Muhlbauer's opinion, as well as the opinions of other providers, the ALJ repeatedly reasoned that the opinions lending to Gebert's disability were not supported by the record. *See generally* Filing No. 7-1. In doing so, the ALJ disregarded his own evaluation of the medical records in which he repeatedly acknowledges that Gebert was recurrently observed to be, and self-reported feeling, anxious, depressed, fidgety, irritable, and angry. *Id.* at 14–16. The medical records are wholly consistent with a finding of disability.

The Court finds that Muhlbauer's opinion and the evidence in the record supports Gebert's claim of disability, as previously discussed herein. While the ALJ need not grant

17

any medical opinion, including that of a treating provider, controlling weight under applicable social security administration rules, the ALJ must consider (1) supportability; (2) consistency; (3) relationship to the claimant, including (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c. As discussed above, Muhlbauer's opinions were supported by, and consistent with, the record as a whole. The remaining factors further credit Muhlbauer's opinion as she has been the claimant's treating mental health provider, meeting him on a weekly basis, for multiple years.

Next, the ALJ questions Gebert's credibility and discounts the severity of his reported symptoms. In determining whether to fully credit a claimant's subjective complaints of disability, the ALJ engages in a two-step process: (1) the ALJ considers whether there are underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms; and (2) if so, the ALJ evaluates the claimant's description of the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to work. Soc. Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.) (Mar. 16, 2016) (Policy Interpretation Titles II & XVI: Evaluation of Symptoms in Disability Claims). In the second step of the analysis, an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*, 81 Fed. Reg. at *14168.

To determine the intensity and persistence of an individual's symptoms, the ALJ evaluates objective medical evidence, but will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled.  *Id.*  The ALJ must not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  *Id.* at *14169.

Here, the ALJs relies on reports of Gebert's timeliness, grooming, alertness, and general ability to interact with a medical provider as evidence his symptoms are not severe.  This conclusion is misplaced.  The records show that Gebert may present relatively normal in short, predictable interactions.  He may not exhibit significant complications in all exchanges, and he has structured much of his life to reduce stress and symptoms.  As Gebert testified, and his mental health providers confirmed, he has trouble controlling his anxiety and anger and he experiences more severe symptoms in public settings and when interacting with other people.  These symptoms negatively impact his ability to concentrate, stay on task, and, ultimately, work.  He attempts to control his ongoing symptoms by isolating and he spends the vast majority of his time at home.  This symptomology is not inconsistent with Gebert being able to occasionally present and orient himself appropriately.  An ALJ cannot rely on the claimant's ability to perform limited functioning during a period of low stress as substantial evidence that a claimant who sometimes experiences high stress is not disabled.  *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001).

The ALJ also discounted Gebert's complaints based on his descriptions of his daily activities such as preparing simple meals, household chores, and going to the grocery store. The ALJ reasoned that Gebert's ability to complete these tasks suggests he is capable of performing light work as described in the assigned RFC. However, many of these tasks, including all of those in his home, are done in a familiar environment where he does not have to interact with other people. Even in his home, where he is presumably most comfortable, Gebert reported isolating from his girlfriend and her mother. His girlfriend confirmed his isolation for weeks at a time and reported having to remind Gebert to do basic tasks such as eat and pay bills. Filing No. 6-1 at 203–08. Moreover, when discussing grocery shopping, Gebert testified he goes to the same grocery store every time with a short list to finish as quickly as possible. Filing No. 5-2 at 63. He "looks over his shoulder" and does his "best to avoid contact" with other people. Id. This testimony is also consistent with his report to his therapist that he sought treatment after he "mean mugged an old lady" at the grocery store for being slow and that his own reaction frightened him. Filing No. 6-1 at 226. It is also consistent with Gebert's report to a VA clinician that he will leave his groceries in the store and sit in his car when he experiences an anxiety attack. Id. at 503. The activities Gebert undertook are not inconsistent with his limitations. It is well recognized that "[i]ndividuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E). "Such individuals may be much more impaired for work than their signs and symptoms would indicate." Id.

The ALJ also erred in discounting Gebert's subjective complaints of anxiety, depression, panic attacks, anger, irritation, trouble interacting with others, sleep

disturbances, hypervigilance, etc. Rather, the symptoms Gebert testified to, and repeatedly reported to various providers, are consistent with his diagnoses. Additionally, the extent of the treatment he has sought is comparable to the severity of his complaints. While the ALJ notes a gap in treatment around December 2018, Gebert attended *weekly* therapy sessions with Muhlbauer from May 2019 to the date of last insured (and beyond). Filing No. 8-1 at 10–15. He also regularly attended appointments at the VA for psychiatric medication management, primary care, and acupuncture treatment. *See generally* Filing No. 6-1. "An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)). Here, Gebert's subjective complaints were *consistent* with the record and the ALJ's doubt of the severity of his reports is erroneous.

Because the ALJ failed to appropriately credit the medical evidence and Gebert's testimony of disabling limitations, the ALJ presented a hypothetical to the vocational expert that did not accurately reflect Gebert's impairments and limitations. The vocational expert's opinion therefore does not constitute substantial evidence to satisfy the Commissioner's burden to prove there are jobs in the national economy that a person with Gebert's impairments can perform. Crediting Gebert's testimony with respect to disabling anxiety, aggravation, anger, panic attacks, and difficulty focusing and affording appropriate weight to Gebert's treating mental health providers opinions, the record supports the finding that Gebert's impairments—including being off task more than ten percent of the day, a number of absences per month, and inability to appropriately interact with supervisors or co-workers—would preclude employment.

A reversal and remand for an immediate award of benefits is appropriate where the record overwhelmingly supports a finding of disability. *Taylor,* 118 F.3d at 1279. The Eighth Circuit has repeatedly approved of immediately awarding benefits based on the controlling weight afforded to the opinion of a claimant's treating medical provider. *See Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009); *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003); *Cunningham v. Apfel*, 222 F.3d 496, 503 (8th Cir. 2000); *Singh*, 222 F.3d at 453; *but see Papesh*, 786 F.3d at 1135–36. Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate. *Hutsell,* 259 F.3d at 714 (8th Cir. 2001).

Accordingly,

IT IS ORDERED:

1. The plaintiff's motion to reverse (Filing No. 12) is granted;

2. The defendant's motion to affirm (Filing No. 16) is denied;

3. The decision of the Commissioner is reversed;

4. This action is remanded to the Social Security Administration for an award of benefits.

Dated this 16th day of February, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

22